**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| CONNIE LYNN KERSEY, | ) | CA No.  2:19-cv-328-RMG-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MEDICAL UNIVERSITY HOSPITAL | ) | |
| AUTHORITY d/b/a MEDICAL | ) | |
| UNIVERSITY OF SOUTH CAROLINA, | ) | |
| | ) | COMPLAINT |
| Defendant. | ) | (Jury Trial Demanded) |
| | ) | |
| | ) | |

**I.**

**INTRODUCTION**

1. This is an age discrimination, FMLA retaliation, and disability discrimination and retaliation action arising out of the employment practices of the Defendant. The Plaintiff seeks relief which includes reinstatement, an injunction from further discrimination, lost wages and benefits; future wages and benefits, if reinstatement is determined to be inappropriate, liquidated damages and attorney's fees and costs for the prosecution of this action, pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, *et seq.*, and the Americans with Disabilities Act ("ADA") 42 U.S.C. §126, *et seq.*

**II.**

**JURISDICTION AND VENUE**

2. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §1343(3) and §1343(4) conferring original jurisdiction upon this court of any civil action to recover damages or to

secure equitable relief under any Act of Congress providing for the protection of civil rights, under the Declaratory Judgment Statute, 22 U.S.C. §2201 and under 29 U.S.C. §623(a).

3. The unlawful acts complained of are alleged to have been committed within Charleston County, South Carolina, the residence of the plaintiff during the time she availed herself of FMLA leave, and the residence of the plaintiff at the time she was unlawfully discriminatorily and retaliatorily treated by Defendant. The Venue of this Court is, therefore, proper under 28 U.S.C. 1391.

### III.

### PARTIES

4. Plaintiff, Connie Lynn Kersey, is a citizen of the United States and a resident of Charleston County, South Carolina.

5. Medical University Hospital Authority d/b/a Medical University of South Carolina (hereinafter "MUHA," "MUSC," or "defendant"), is organized and existing under the laws of South Carolina, and has its principle place of business in Charleston County. MUHA transacts substantial business in South Carolina.

### IV.

### STATEMENT OF FACTS

6. Plaintiff is currently 46 years old (DOB).

7. Plaintiff was employed by the defendant MUHA for approximately twelve years prior to her resignation in September 2017. Plaintiff was employed by MUHA as an LPN Nurse.

8. Plaintiff maintained an excellent performance record during the course of her employment with the defendant. She has had extensive experience as a nurse in the medical field, and her performance was often praised by her superiors.

9.      Nonetheless, defendant discriminatorily and unlawfully terminated the employment of the plaintiff on account of her age, in retaliation for exercising her rights under the FMLA, and/or her disability (cancer).  Following her termination in December 2016, plaintiff was "re-hired" in the grievance process into a "pool nurse" position that required travel and a varying work schedule.  Due to the rigors of the new position and her failing health, plaintiff retired from MUSC in September of 2017 and is now on social security disability.

10.     In the late summer of 2015, plaintiff's mother was diagnosed with terminal cancer.  She passed away on September 25, 2015.  During that period of time, plaintiff applied for and took leave under the Family and Medical Leave Act (FMLA).

11.     Just days after she buried her mother, plaintiff was diagnosed with stage 2B breast cancer, an aggressive form of breast cancer.  Six weeks later, in November of 2015, her doctors told plaintiff that she had the "cancer gene" and she would need both a double mastectomy and a complete hysterectomy.

12.     The first surgery, the mastectomy, was scheduled for April of 2016.

13.     Between November 2015 and April 2016, cancer was found in plaintiff's lymph nodes. She was required to undergo chemotherapy from November of 2015 until the surgery.

14.     From November 9, 2015, to December 19, 2015, plaintiff was allowed to take intermittent FMLA leave during treatments every other Friday.  From December 29, 2015 to March 18, 2016, plaintiff took FMLA leave every Friday during her treatments.

15.     Seeking a reasonable accommodation to her disability, cancer and the effects of the cancer treatment on her body, Plaintiff asked the defendant to temporarily reduce her workload due to the high level of medication that was required to fight the cancer. The defendant refused to provide any reasonable accommodation to the plaintiff.

16. On April 15, 2016, plaintiff had double mastectomy surgery.

17. MUHA gave plaintiff six weeks of FMLA leave to recover from the surgery. During that period of time, she had several complications requiring two more surgeries and a hospitalization due to an infection related to the mastectomy surgery.

18. Plaintiff made her supervisors at MUSC aware of the complications and the additional time she needed to recover beyond the six weeks. She asked for additional time as a reasonable accommodation based on her disability.

19. Nonetheless, on or around May 24, plaintiff received a communication from MUSC stating that if she did not return to full duty by June 20, 2016 that her position would be terminated.

20. Plaintiff was being treated as a patient at MUSC during this time. Her supervisor, Julie Rhone, visited plaintiff in the hospital in June, while she was recovering from the complications. While plaintiff was recovering in the hospital, Rhone came into the hospital room and told plaintiff that she needed to "go out on disability" and that she "needed her back at work right away".

21. After being threatened with the loss of her long term employment by both MUSC directly and by her supervisor, plaintiff asked her doctors to do "whatever was necessary to get [her] healthy enough to work immediately".

22. On June 9, 2016, plaintiff was released from the hospital. She was prepared to return to work on June 13. However, she was given a lift restriction by her doctors of twenty pounds while her body healed from the surgeries and infection.

23. Plaintiff's supervisor, Rhone, told her she could not return to work unless she was able to lift fifty pounds. Plaintiff immediately asked for an accommodation to allow her to perform

other tasks that did not require such heavy lifting so that she could return to work prior to the termination date of June 20 to save her job. Rhone instantly denied the request. There were many tasks and positions in the unit where plaintiff was employed that could be performed by an individual limited to lifting twenty pounds.

24. Plaintiff, extremely fearful of the imminent threatened termination, returned to her doctor and requested that the lift restriction be removed so that she could go back to work. The doctor complied, and plaintiff returned to her unit at MUSC without the lifting restriction.

25. Plaintiff then re-entered the workplace and was greeted with hostility. Plaintiff was treated differently than prior to her illness and surgery. The defendant and plaintiff's supervisors consistently retaliated against plaintiff for taking the medical leave she was granted and that was necessary to her cancer treatment and recovery. Her supervisors changed plaintiff's scheduled work times without warning. On at least three occasions, Rhone and Bonita Curnell, plaintiff's immediate MUHA manager, suggested that plaintiff should leave MUSC because she was disabled. Plaintiff began being singled out for minor errors that were common to other nurses on the staff. At this time, plaintiff was required to wear tubing and plastic bags on her person to collect the discharge from her healing incisions.

26. Plaintiff began radiation therapy in July of 2016. Instead of being able to properly consult with her doctors to determine when she should receive the treatments, it was her supervisors that directed the times that she could receive radiation. During her treatments, they would closely monitor the times and whether they affected plaintiff's working hours. If plaintiff was even one minute late because the treatment ran long, her supervisors were hostile and made her feel as if her job was in jeopardy. Despite the fatigue and side effects from the radiation

treatment and the constant hostility from her supervisors, plaintiff continued to work and perform her job well during her treatment.

27.     In August of 2016, plaintiff was diagnosed with chronic lymphedema in both arms as a result of her cancer treatment. For that condition, plaintiff was medically required to wear compression bandages to ease the swelling.

28.     On August 18, plaintiff was told by Rhone in a meeting to either remove the bandages or to go home because of a fear of infection of patients. Rhone stated that she had spoken with the "head of infectious diseases" and that plaintiff could not work with the bandages on. This statement was entirely untrue–Rhone had never consulted with anyone from infectious diseases about plaintiff's bandages presenting a risk of infection for patients.

29.     Plaintiff asked right away if she could perform some other work, as an accommodation, during the period of time that she needed the bandages. Rhone denied the request directly. Fearing she would be terminated if she missed any more time, plaintiff removed the medically necessary bandages and went to work.

30.     Between August 18, 2016 and the middle of October, plaintiff was forced by Curnell and Rhone to cancel medically necessary appointments and treatments. Plaintiff's mental and physical health suffered greatly because of these cancellations. Plaintiff's supervisors' hostility towards her increased during this time and the working environment became unbearable.

31.     Plaintiff requested help through employee assistance and Human Resources and was denied any aid.

32.     In November, plaintiff was required to have a hysterectomy to stop the growth of cancer in her body. Plaintiff's supervisors and upper level MUHA employees were well aware of the impending surgery and the time that plaintiff would need to recover.

33. Plaintiff was initially accommodated by a grant of thirty-days leave to recover from the surgery. At the end of the thirty days, plaintiff needed at least two more weeks to heal prior to returning to work. She asked Sherri Gillespie Miller, the head of ambulatory care, to accommodate her with additional leave. The accommodation was summarily denied. Miller later told plaintiff that she "could have given her" another thirty days, but that she "chose not to do so".

34. In the beginning of December, 2016, plaintiff received a letter in the mail terminating her employment. The justification given was that plaintiff had simply run out of time. This was a difficult blow for plaintiff, especially given how diligently she worked and risked her health to retain her employment in the fact of Defendant's persistent refusals to grant plaintiff reasonable accommodations. Defendant claimed that granting any further leave would be a hardship, but MUHA employs hundreds of nurses who were able to fill in for plaintiff during her recovery.

35. Defendants replaced plaintiff with Stephone Bowman, an individual in his early 20's who is exceedingly less qualified for the position, and who, upon information and belief, is not an individual with a disability.

36. Plaintiff grieved the termination.

37. In January, 2017, as a result of the grievance procedure, plaintiff was "re-instated" to a different position within MUSC as a "pool" nurse. Plaintiff was led to believe that the position would be better for her and that she would make more money as a "pool" nurse.

38. While the position offered plaintiff flexibility, it was difficult on her having to travel and work with individuals she was not familiar with.

39. After spending several shifts at the Hollings Cancer Center – the same place that she received all her treatment – plaintiff concluded that she could no longer continue in the position with MUSC based on both her physical and mental health. She resigned in September of 2017.

## V. Conditions Precedent

40. Plaintiff timely filed a charge of discrimination against the Defendants simultaneously with the State Human Affairs Commission ("SHAC") and the Equal Employment Opportunity Commission ("EEOC").

41. The EEOC issued a "Notice of Right to Sue" dated December 4, 2018. This lawsuit is timely filed.

## VI.

### FIRST CAUSE OF ACTION - Federal Law
### (Age Discrimination)

42. By acts and practices alleged above, and by other and related acts and practices, Defendant has willfully deprived Plaintiff of equal employment opportunities guaranteed by law by discriminating against her with respect to the terms, conditions and privileges of her employment, including the treatment and termination of the Plaintiff and the replacement of Plaintiff with an individual approximately twenty years younger than her without reasonable justification on account of her advanced age and by depriving her of her employment opportunities; all in violation of §4(a) of the Age Discrimination in Employment Act, 29 U.S.C. §623(a).

## VII.

### SECOND CAUSE OF ACTION - Federal Law
### (Disability Discrimination and Retaliation)

43. Plaintiff realleges, and incorporates here by reference, all allegations contained in Paragraphs 1 through 42 above.

44. By acts and practices alleged above, and by other and related acts and practices, Defendant has willfully deprived Plaintiff of equal employment opportunities guaranteed by law by discriminating against her with respect to the terms, conditions and privileges of her employment, including the termination of the Plaintiff and the failure to accommodate Plaintiff during her treatment without reasonable justification on account of her disability (cancer) and by depriving her of her employment opportunities including retaliating against plaintiff for the use of medical leave to treat her disability; all in violation of the Americans with Disabilities Act 42 U.S.C. §126, *et seq.*

## VIII.

### THIRD CAUSE OF ACTION – Federal Law
### (FMLA Retaliation)

45. Plaintiff realleges, and incorporates here by reference, all allegations contained in Paragraphs 1 through 44 above.

46. By acts and practices alleged above, and by other and related acts and practices, Defendant has willfully deprived Plaintiff of equal employment opportunities guaranteed by law by discriminating against her with respect to the terms, conditions and privileges of her employment, including the treatment and termination of the Plaintiff without reasonable justification in retaliation for Plaintiff taking medical leave to treat her disability (cancer) and by depriving her of her employment opportunities; all in violation of the Family and Medical Leave Act, 29 U.S.C. §2601, *et seq.*

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all matters triable to a jury.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment for her, and against defendant as follows:

a. For a declaration that Defendant violated her statutory rights pursuant to ADEA, FMLA, and the ADA;

b. For an award of back pay and benefits compensating Plaintiff for the wages and benefits she would have received if she had been working for Defendant in her original position from the time of her termination, to the present;

c. For a permanent injunction requiring reinstatement or, if reinstatement is inappropriate, for an appropriate amount of front pay to be established at trial;

d. For liquidated damages against Defendant, for violations of the ADEA and FMLA;

e. For attorney's fees and costs for violations of ADEA, FMLA, and ADA;

f. And for such other and further relief as to the Court appears proper and just.

                              GIBBS & HOLMES

                              S/ Timothy O. Lewis
                              Allan R. Holmes, Federal I.D. #1925
                              Timothy O. Lewis, Federal I.D. #9864
                              Suite 110, 171 Church Street
                              Charleston, South Carolina 29401
                              Phone: (843) 722-0033
                              Facsimile:  (843) 722-0114

February 4, 2019                    ATTORNEYS FOR THE PLAINTIFF